

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-132-CR

DOUGLAS WAYNE SWARINGEN                          APPELLANT

V.

THE STATE OF TEXAS                                      STATE

------------

### FROM COUNTY COURT OF YOUNG COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In two issues, appellant Douglas Wayne Swaringen asserts that the evidence is legally and factually insufficient to support his conviction for the offense of terroristic threat.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural History

This is the case of beer talking.[2] The basic background facts of this case are not in dispute:  on July 14, 2007, Swaringen fell off his bicycle because he was drunk, and he proceeded to get into an argument with the police. Swaringen was belligerent because he harbored a grudge against the Graham Police Department for its alleged insensitivity to his wife's special needs.

Because of his intoxicated state and hostile attitude, Swaringen found himself, not for the first time, in the back of a Graham Police Department police cruiser on his way to the Young County Justice Center.  According to Officer William Allred, the arresting officer, Swaringen said "he was going to shoot and kill us all when he gets out of jail."  Officer Allred also said that Swaringen said "[e]very one of you [i.e., the police] needs to be shot."  This second statement, about needing to be shot, was recorded by equipment in the police car and memorialized in the officer's police report.  The first statement—the one about Swaringen shooting the police—was not.  It was Swaringen's unrecorded and unmemorialized statement that led to his indictment, trial, and conviction.

The State called three witnesses at trial—Jimmy Darrell Odom, Officer Tommy Shawver, and Officer Allred.  Odom testified that on July 14, 2007, he

---

[2] According to Swaringen, his "homicidal threats were merely the beer talking."

was leaving the Minute Mart in Graham when he saw Swaringen fall off his bike. He testified that he suspected that Swaringen was drunk and that Swaringen "really bumped his head good" from the fall because he saw Swaringen bleeding from his head. Swaringen then got "mouthy" with a woman who came to Swaringen's assistance, so Odom flagged down a nearby officer (Officer Allred), who tried to help Swaringen. All the officer's efforts seemed to do was further anger Swaringen. When the officer tried to put Swaringin's hands behind his back, Swaringin resisted, and the officer bent him over the hood of a nearby truck. Next, a brief struggle occurred between Swaringen and Officer Allred and another officer (Officer Shawver), with the officers eventually subduing Swaringen and placing him under arrest.

Officer Shawver testified that he responded to Officer Allred's request for assistance. When he arrived at the scene, Officer Allred was in the process of arresting Swaringen, and he observed that Officer Allred had Swaringen's left arm behind him and had him bent over the hood of a truck. Officer Shawver then assisted Officer Allred in handcuffing Swaringen. Swaringen was both "belligerent" and "very intoxicated." On cross examination, Officer Shawver said that while he heard Swaringen cursing at him and Allred, he did not hear Swaringen make any threats against the officers. Officer Shawver also said that he knew that Swaringen's wife, Amelia, had mental problems, that she

3

was often arrested and/or hospitalized as a result of those problems, and that he was aware of the tempestuous relationship that existed between Swaringen and Amelia.

Officer Allred testified that he was driving towards the Minute Mart when he saw Swaringen fall off his bike. He came to Swaringen's assistance, but Swaringen was both "combative" and "intoxicated," so he called for backup. Officer Allred could smell alcohol on Swaringen's breath, and his eyes were bloodshot. When Swaringen refused to get up, the officer grabbed his hand and pulled him to his feet. Swaringen began "twisting," and the officer pushed him against the hood of a nearby vehicle. He and Officer Shawver then arrested Swaringen for public intoxication. Officer Allred testified about Swaringen's first verbal threat:

> A. I placed him in the patrol car, and I went around and basically sat in my car. That's when I sat in my car, fixing to take him to the jail.
>
> Q. Okay. Did he make a threat to you?
>
> A. Yes, sir.
>
> Q. What did he say?
>
> A. He said he was going to shoot and kill us all when he gets out of jail.
>
> Q. And did you then -- what did you do next?

4

A.  I turned my -- I had my camera -- my dash camera on, and then I turned it around to face him.  But I remembered that this is a new car, just got it.  It has a dash -- it has a camera pointing to the back and had an internal mic.  So I pushed it and it faced the back, and then I turned the audio for the back on.

. . . .

A. . . . He said that he was going to shoot and kill us when he got out of jail.

. . . .

A.  The threat happened prior to the audio being on.  It happened when I first sat in the vehicle while I was fixing to go to the jail.  That's what I meant in the report.   But when I first sat in the vehicle, that's when he said it.  That's why I adjusted all my videos and cameras in case he said it again or in case he did anything else, to get it all on videotape while going to the jail.  And that's what -- the threat of him killing us -- shooting to kill us when he gets out was prior to the audio being turned on.  The one he -- the time he said while en route, I guess what you're saying, almost to the jail, that's not the threat I'm talking about.  The threat is prior to.

. . . .

A.  I remember what was said prior to the cameras being turned on him and the audio turned on.  He threatened me when I first sat in the vehicle, and then that's what caused me to turn the vehicle -- or the cameras to on the back with the audio and everything.

Q.  Well, why didn't you put that in the report?

A.  I have no idea.

Q.  If that's the subject of your complaint, shouldn't it have been put in your report?

A.  Yes, sir.

5

While en route to the jail, Swaringen told the officer that "[e]very one of you needs to be shot," and this was played for the jury. On cross examination, Officer Allred agreed that there was no recording of Swaringen saying he was going to shoot the officers after he got out of jail, that Officer Shawver was physically present at the scene when (according to Officer Allred) Swaringen said that he was going to kill the officers, that he never put in his report Swaringen's statement about killing the officers, and that his failure to put that statement in the report was an error.

On April 23, 2008, Swaringen was found guilty of the offense of terroristic threat regarding the statement that "he was going to shoot and kill us all after he gets out of jail"and sentenced to 180 days in jail and a $1,000 fine. This appeal followed.

### III. Legal and Factual Sufficiency

**A. Standard of Review**

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

6

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State,* 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App.

7

2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence

8

because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9. Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

**B. Terroristic Threat**

The elements of this offense are found in section 22.07 of the Texas Penal Code, which in part reads,

> (a) A person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to:
>
> . . . .
>
> (2) place any person in fear of imminent serious bodily injury;
>
> . . . .
>
> (c) An offense under Subsection (a)(2) is a Class B misdemeanor, except that the offense is a Class A misdemeanor if the offense:
>
> . . . .

9

(2) is committed against a public servant.

Tex. Penal Code Ann. § 22.07 (Vernon Supp. 2008).

In *Dues v. State*, our Texas Court of Criminal Appeals stated:

Therefore, in order to commit this offense [i.e. terroristic threat] the accused must have the specific intent to place any person in fear of imminent serious bodily injury. . . . Intent can be inferred from the acts, words, and conduct of the accused. However, the accused's intent cannot be determined merely from what the victim thought at the time of the offense. Indeed, for this offense to be completed it is not necessary that the victim or anyone else was actually placed in fear of imminent serious bodily injury. Additionally, it is immaterial to the offense whether the accused had the capability or the intention to carry out his threat. All that is necessary to complete the offense is that the accused by his threat sought as a desired reaction to place a person in fear of imminent serious bodily injury.

634 S.W.2d 304, 305–06 (Tex. Crim. App. 1982) (internal citations omitted).

## C. Analysis

Swaringen stipulates that the statement, "he was going to shoot and kill us all after he gets out of jail," is (1) a threat to commit an offense, (2) which involves violence, and (3) was made to a public servant; that the threat to "shoot and kill us all" obviously contained a threat involving serious bodily injury; and that the jury could conclude that the threat was imminent.

His complaint with regard to legal sufficiency is that the stipulated threat was delivered in a drunken stupor and that, therefore, Swaringen was incapable of intentionally or knowingly making the threat. As he phrases it,

10

what if the actor is so in his cups that he is incapable of formulating any intent to get a[n] action or reaction? Then the intent element is rendered a nullity, and no conviction will lie. Such, appellate counsel would suggest, is the case here, and accordingly [Swaringen's] conviction ought to be overturned."

This argument is a non-starter. It is axiomatic that "[v]oluntary intoxication does not constitute a defense to the commission of a crime." Tex. Penal Code Ann. § 8.04(a) (Vernon 2003). Likewise, this dog has attempted to hunt in one of our sister courts and failed to do so. *Kingsbury v. State*, 14 S.W.3d 405, 407–09 (Tex. App.—Waco 2000, no pet.) (holding that section 8.04 was not a defense to terroristic threat and that defendant's acts, words, and conduct—pouring gasoline into a bug sprayer, getting a propane bottle, and telling his wife that he was going to "burn [her] ass up" and to "burn this M.F. house with [her] in it," in addition to attempting to set her and the house on fire, sufficiently demonstrated intent). The requisite intent here can be inferred from Swaringen's acts, words, and conduct. *See Poteet v. State*, 957 S.W.2d 165, 167 (Tex. App.—Fort Worth 1997, no pet.); *cf. Jones v. State*, No. 10-07-00365-CR, 2008 WL 3115117, at *2–3 (Tex. App.—Waco Aug. 6, 2008, no pet.) (mem. op., not designated for publication) (holding evidence of terroristic threat legally sufficient with regard to intent but factually insufficient when defendant explained that he told complainant, who had just lost

11

reelection, that by "dead," he meant "politically dead" because of the "skeletons" in her closet). We overrule Swaringen's first issue.

In his factual sufficiency complaint, Swaringen argues that because no one but Officer Allred heard the initial threat, and because Officer Allred did not put it in his police report, this should give the

> Court the gravest concerns about the validity of this particular verdict, and that concern should segue into this Court's overarching responsibility under *Johnson* . . . to reverse if the record "demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination." [Swaringen] believes the lack of corroboration by both the other witnesses and Officer Allred's police report can only point to a conclusion that the evidence was factually insufficient to sustain [Swaringen's] conviction.

Swaringen fails to mention that Officer Allred testified that he was inside his police car when the initial threat was made, presumably outside the hearing of the two other witnesses. The officer also clearly and unequivocally testified that the threat was made but that it was omitted from his report. The remainder of the evidence showed Swaringen's intoxicated and combative nature and Officer Allred's testimony that the initial threat prompted him to

12

activate the audio in his vehicle.[3]    Giving due deference to the jury's determination of Officer Allred's credibility and viewing the evidence in a neutral light, we cannot say that the evidence supporting the conviction is so weak that the jury's determination is clearly wrong and manifestly unjust or that conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust.  Therefore, we conclude that the evidence is factually sufficient to support Swaringen's conviction, and we overrule Swaringen's second issue.

## IV.  Conclusion

Having overruled Swaringen's two issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

WALKER, J. concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 5, 2009

---

[3] We have reviewed the recording of Swaringen's behavior in Officer Allred's vehicle, which the jury also reviewed.  The video shows Swaringen cursing, throwing his body against the partition between the front and back seats, and insulting Officer Allred and police in general.  At one point, Swaringen shouts, "Every mother-f[*]cking one of you needs to be shot on sight, dead as a f[*]cking doornail."

13